JAMES P. CRAIG

*v.*

SARAH McKINNEY.

1. CHANCERY—*jurisdiction in matters of account.* A court of chancery has jurisdiction in matters of account; but it is not every account which will entitle a court of equity to interfere. It must be such an account as can not be taken justly and fairly in a court of equity.

2. SAME—*accounting, how avoided.* Where a bill for an account, filed by a party against his attorney in fact, alleges that the property and money of which an account is sought came into the hands of the defendant as the attorney in fact of complainant, and there is no mention that the defendant ever received anything under or by virtue of any other power or authority, a plea which states an accounting and final settlement of all matters under the power of attorney, and a new arrangement by deed, whereby the defendant was created a trustee for the complainant, and held whatever was in his hands as such trustee, presents a sufficient defense to the case made by the bill.

3. SAME—*objection that plea is not sworn to, is one of form only.* Where a motion is made in the court below to strike out a plea to a bill for an

72   305
121   496
72   305
36a   642
72   305
188   61
72   305
41a   399
72   305
161   384
72   305
75a   297
72   305
94a   ³485
72   305
107a   ⁴171

account, on the ground that it presents no bar to the relief prayed for, and that it does not fully answer the bill, but no objection is made on the ground that it is not sworn to, that objection can not be taken advantage of at the hearing as to the sufficiency of the plea, such defect being one of form only.

4. NOTICE—*taking an account before the master.* The general rule, that all persons having an interest in the result of the proceedings should have notice of the attendance before the master, extends to cases in which a defendant, after appearance, has allowed the bill to be taken against him *pro confesso*, and a decree to be made for want of an answer.

5. MASTER'S REPORT—*where an account is stated, the items should appear.* A master's report where a cause is referred to him to state an account, should in some way show the items of the account as stated by him. He should state facts, and not general results.

6. Where the master reports upon accounts, the usual way is, to state results in the body of his report, and refer to schedules as to the particular items, wherein sufficient of the details should appear to show the ground of his decision as to the results stated.

APPEAL from the Circuit Court of Randolph county.

This was a bill in chancery, brought by the appellee, against the appellant, for an account and a delivery over of money, property and papers.

The bill alleges that, on or about the 9th of October, 1866, the complainant executed her power of attorney, making the defendant her attorney in fact, with full power and authority to collect and receive all moneys then due or to become due to the complainant, in the United States; also, to purchase, lease, mortgage, sell and convey real estate in the county of Randolph, in this State, or elsewhere, and also, to do and perform for the complainant, and in her name, whatever she might lawfully do, if present.

The bill then alleges that, on the 27th of August, 1867, the defendant had in his possession "a large amount of property and effects belonging to the complainant, which he had received previous to that date, as attorney in fact for complainant, amounting, in the aggregate, to the sum of $31,500, consisting of the following specified property, to-wit: House and lot in the city of Chester, valued at $1500; one farm in the county

of Randolph, valued at $1500; one promissory note on M. Wise, for $500; one note on Charles Schrodi, for $2500; one note on William Swanwick, for $5000; cash in the hands of defendant, amounting to $5500, and United States bonds, amounting to $13,000;" that the defendant has had the control and management of said property from the 9th of October, 1866, as attorney in fact for complainant, and has, as such attorney, rented said real property, and collected rents, from October 9, 1866, to February, 1871, and has collected moneys on said notes, and the interest on moneys loaned, and has reloaned and reinvested the same, from time to time, since October 9, 1866, to the time of the filing of the bill, and that the property, the increase and profit thereof is still in the custody and under the control of defendant, excepting, only, the following amounts which have been paid to complainant by defendant, as follows:   On the 27th of August, 1867, or thereabouts, $13,000, in United States bonds; on or about November 27, 1868, $3300; October 7, 1870, $1000; March 2, 1870, $1000, and since October 7, 1870, about $1500.

The bill then avers that complainant had revoked the power of attorney; that defendant had refused to render an account, and prays that an account may be taken, and defendant be required to pay over and deliver to complainant all money, property and papers belonging to her in his hands.   The bill was filed August 14, 1871.

Defendant first demurred to the bill, and the demurrer was overruled.   He then filed a plea, setting up that on the 27th of May, 1870, he fully accounted with the complainant concerning the property and estate committed to his care and control, under and by virtue of the power of attorney, and described in the bill, at which time complainant took possession and assumed control, by herself, in her own right, of all the property and estate, at that time, upon such accounting, found to belong to complainant, and that she then made and entered into a new agreement with the defendant in regard thereto, and that she then transferred and conveyed certain portions of said property and estate to the defendant, in trust,

by virtue of a deed of conveyance by her executed and acknowledged, and which was duly recorded.

The plea averred that the defendant held the said property in trust for the complainant, under and by virtue of said deed, for the uses and purposes therein mentioned, and that he had faithfully done and performed all things therein stipulated and required of him, and that said deed had never been revoked or annulled, but the same yet remained in full force and effect.

The deed, made part of the plea as an exhibit, is as follows:

"This deed and assignment, made and delivered this twenty-seventh day of May, in the year one thousand eight hundred and seventy, witnesseth: That, whereas, I, Sarah McKinney, formerly Sarah Rae, now the wife of Arthur G. McKinney, being the owner, in my own separate right, of the real estate and personal property hereinafter described and mentioned, and being desirous of having said real estate and personal property, and the rents, issues, profits and interest arising and accruing thereout and therefrom, so used and invested as that the same shall be for my own exclusive use and benefit, and for such purposes as I may or shall direct and appoint by my last will and testament, to be by me hereafter made, free from the use, control or interference of any person or persons other than by my trustee hereinafter named, do, by these presents, in consideration of the premises, hereby grant, bargain, sell, convey and confirm, assign, make over unto and into the possession of James P. Craig, my cousin, now of Randolph county, in the State of Illinois, all the following described real estate and personal property, now in my possession and subject to my control, to-wit: The east half of the north-east quarter of section eight, and the north-west quarter of the north-west quarter of section nine, all in township seven, range six, in said county; also, part of lot numbered eleven, in Stratton's addition, and the house and improvements on said lot, in the city of Chester, in said county; also, all the promissory notes and mortgages this day indorsed by me and delivered to him, which notes and mortgages call for and secure to me, or to the holder thereof, the sum of twelve thousand dollars, with the

accrued and accruing interest which has and will accrue there-from, to have and to hold the same, the said real estate and personal property to the said James P. Craig, in trust, for me and for my separate use, as is hereinafter stated, to-wit: My said trustee is to control and manage said property, and to keep the same improved and invested as in his judgment he shall deem most proper and advantageous to my interest. He is to use of the rents or other income arising therefrom so much as may be needed and required to erect, and otherwise finish and furnish, a dwelling house and other needed improvements on one or more of the tracts of land hereinbefore described, for me and for my use; pay over to me semi-annually, after deducting taxes and other necessary expenses incurred for and on account of the same, and of this trust, the rents, profits and interest which shall arise and accrue from said real estate and personal property, and, at my death, dispose of, divide or pay over the same as shall be requested and directed by me in my last will and testament, to be by me made and acknowledged subsequent to the date of this conveyance and assignment. In testimony whereof, I have hereunto subscribed, the day and year above written.

"SARAH McKINNEY.     [SEAL.]

"I hereby accept of this conveyance, assignment and trust, upon the terms and for the purposes mentioned and within written.

"JAMES P. CRAIG."

On a motion by the complainant to strike out the plea, the court overruled the plea, and, the defendant refusing to make any further answer, the bill was taken for confessed against him, and the court decreed that the defendant deliver and transfer to the complainant all promissory notes, money, property, deeds of conveyance, etc., in his hands, belonging to complainant or pertaining to the management of her business, and that the power of attorney, and every other authority, instrument or trust giving to defendant the right or power to manage or control the business or property of the complainant, be annulled, and an order of reference was made to the master to

take an account of all the dealings and transactions of the defendant about the management and transaction of the property and business of complainant. · The master made his report that there was a balance in the hands of defendant due the complainant of $24,880.24. Exceptions were taken to the report, and overruled. The report was accompanied by three depositions, those of Roseborough, William J. Craig and the complainant, as containing the testimony upon which the report was based.

The bill of exceptions shows that, upon the final hearing of the cause, September 23, 1874, the court heard the following additional evidence:

James P. Craig, the defendant, being sworn, in answer to the question asked by the court as to "wherein the account of the special master, showing defendant's indebtedness to the complainant to be the sum of $24,880.24, is wrong," testified that, on the 27th of May, 1870, he had a full and satisfactory settlement with the complainant of the business transacted by him, as attorney in fact for complainant, under the power of attorney in question; that, at that time, he had in his possession, belonging to her, the sum of $12,000, in notes, which he turned over to her; that she received the same, and expressed herself satisfied; that the balance of property then in his hands and under his control was valued at about $15,000, there being $12,000 of it in notes; that the complainant expressed herself satisfied with the settlement, and received said property from him in full satisfaction of his doings as her attorney in fact, and that she then executed to him a deed of conveyance and assignment in trust of the property (being the same deed above set out in the plea), and assigned the notes over to him, by indorsement, in conformity with the deed of trust; that, on December 2, 1870, he paid complainant $2000, for which she gave the following receipt:

"Received, Chester, December 2, 1870, of James P. Craig, my agent and trustee, payment in full of all demands on account of his trust collections to October 1, 1870; also, payment in full of the note of Col. T. G. Allen, this day assigned

to William J. Craig, the same being $2000 of the $12,000 assigned by me to James P. Craig, in trust, May 27, 1870, and in full payment and discharge of all monetary obligations of my trustee as aforesaid, to October 1, 1870.

"SARAH McKINNEY."

That he then had in his hands, as trustee of the complainant, $10,000, the interest thereon having been paid by him to complainant from the date of the deed of trust and assignment to April 1, 1873, and that the improved real estate then was and had been in the complainant's own enjoyment and possession since about the period of the deed and assignment.

William J. Craig was sworn, and testified in corroboration of the defendant as to complainant understanding the condition her property was in, and being satisfied with the accounting of the defendant up to the time of the execution of the deed of trust and assignment, and that he was present at the time of the receipt of December 2, 1870, and complainant then admitted that defendant then had in his possession notes secured to the amount of $10,000 only, and the real estate above referred to, and that she expressed herself satisfied with the accounting then.

Sarah McKinney, the complainant, then being sworn, testified, admitting the execution of the trust deed and receipt, but that she never knew whether they were correct or not; that defendant told her they were right, and she depended on his word; that there never was any settlement or accounting between them from the time defendant first took possession of her effects to that time. She had relied on his statement alone in the whole matter.

The bill of exceptions concludes with the statement that it was upon the special master's report the foregoing depositions and exhibits, and the testimony last mentioned, and no other, the court rendered the final decree. On the 23d of September, 1873, the court entered a final decree against the defendant for the sum of $24,880.24, to be satisfied, in part, by the delivery by the defendant, within 90 days, to the complainant, of William Swanwick's note for $5000, James P. Craig's note

for $5000, Charles Schrodi's note for $2500, and the residue in money.

The defendant brings the case here by appeal.

Mr. THOMAS G. ALLEN, for the appellant.

Mr. J. PERRY JOHNSON, and Mr. THOMAS S. CASEY, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is first assigned for error that there is nothing shown in the bill to bring the case within the jurisdiction of a court of equity.

That a court of chancery has jurisdiction in matters of account, can not be questioned; and while it is not every account which will entitle a court of equity to interfere, and that it must be such an account as can not be taken justly and fairly in a court of law, we can not doubt that, from the difficulty of investigating the accounts here involved, this is a proper case for chancery.

It is next assigned for error, that the court erred in overruling defendant's plea.

The bill was one for an account of defendant's doings as attorney in fact of complainant, under and by virtue of the power of attorney described in the bill, and for the payment and delivery over of what was in his hands as such attorney.

Although, in the prayer for relief, it is asked that discovery be made of what had been done by virtue of the power of attorney, or under or by virtue of any other power or authority whatsoever, and that an account be taken of all the doings of defendant concerning the property of complainant, yet the averments of the bill are, that all the property charged to have come into defendant's hands came into his hands as such attorney in fact, and there is no mention whatever that any other power or authority was ever given to defendant, or that he ever did or received anything under or by virtue of any other power

or authority.   So that the bill must be taken to be one only of the character above mentioned.   Whatever, then, showed that there had been an accounting and settlement by defendant with complainant, in respect of the transactions of defendant, as her attorney in fact, under the power of attorney, and that what was then found to belong to complainant was then delivered over and received by her, and that she subsequently entered into a new arrangement, and assigned and conveyed her property to the defendant in trust, by her deed of conveyance, would seem to present an apparent defense to the case made by the bill.   This the plea did in substance show.   We think it may be considered as substantially a plea of a settled account.

It is urged, in support of the ruling of the court, that the plea was not sworn to.   But no such objection was made to the plea.   There was a motion to strike out the plea, but the reasons assigned in support of the motion were, that the plea was no bar to the relief prayed for, and that it did not fully answer the bill.   The court seems to have treated the motion as one to set down the plea for argument, and to have regarded the plea as being so set down; the order of the court reciting that the plea coming on to be argued, it was held to be insufficient, and the same was therefore overruled.   We think the ord·r of the court may be taken as one adjudging the plea to be insufficient as a defense, on its being set down for argument. The rule is, if a plea is not verified by the oath of the defendant, the complainant may move to set it aside, or to have it taken off the files for irregularity.

The defect is regarded as one of form, and the objection comes too late, and can not be taken advantage of at the hearing as to the sufficiency of the plea.   *Heartt* v. *Corning*, 3 Paige, 566; *Bassett* v. *Company*, 43 N. H. 249.   We are of opinion there was error in overruling the plea.

It is further assigned for error, that the court overruled the exceptions to the master's report.

The taking of the account by the master was *ex parte*, without any notice to the defendant.   As an authority that such a notice is not required in cases where a default has been taken

and a reference is made, *Moore et ux.* v. *Titman*, 33 Ill. 358, is cited.   The rule there laid down was correct as applicable to such a case as that, where a bill to foreclose a mortgage had been taken as confessed, and reference to the master to ascertain the amount due, and report to the court.   The duty of the master there was one of mere computation from written evidence of indebtedness in the case, admitted by the bill having been taken *pro confesso.*

No reference there was needed.   The court might have made the computation from evidence already in the case, and have pronounced the decree.

But to extend the rule to all cases where a default has been taken, is not warranted by authority.   In 2 Daniels Ch. Pl. and Pr. 3d ed. 1152, the author, in treating on this subject, says: "The general rule, that all persons having an interest in the result of the proceedings should have notice of the attendance before the master, extends to cases in which a defendant, after appearance to the subpœna, has allowed the bill to be taken against him *pro confesso*, and a decree to be made for want of an answer."   We are of opinion there should have been, here, notice to the defendant of the taking of the account, so that he might have had opportunity to appear before the master on the reference.

The master's report, and the decree thereon, were manifestly insufficient and erroneous.   The master states the results merely of the accounts, as follows:   "That the said James P. Craig has received into his hands, including interest, the amount of $58,999.37; and that he is entitled to credits, including interest, to the amount of $34,118.63; balance due, $24,880.74; leaving a balance in his hands of twenty-four thousand eight hundred and eighty $\frac{74}{100}$ dollars due Mrs. Sarah McKinney by said Craig," without giving any items whatever.

This is no proper stating of an account.   The items of the account should in some way appear.   When the master reports upon accounts, he generally states the results of the accounts in the body of the report, and refers to schedules as to the particular items.  2 Dan. Ch. Pl. and Pr. 1302.   The

master should state the facts found by him, and not general sweeping results; but sufficient of the details to show the grounds of his decision should be stated. *Herrick* v. *Belknap*, 1 Williams (Vt.) 673. Where a chancery suit involves matters of account, the items admitted should be stated, so that exception may be taken to the particular items or class of. items. *Ransom* v. *Davis*, 18 How. 295.

In support of the results of the master's report, appellee's counsel, in their printed argument, present an itemized account, of their own making, which corresponds in result with that of the master, and rely upon it as affording a satisfactory explanation of how the master's result might have been properly reached.

In this itemized account they charge the defendant with $33,000, as received in 1866. But the bill states this amount then received as being the precise sum of $31,500, consisting of seven specified items, stating the precise amount of each item. On adding up those items, they are found to be only $29,500, showing a mistake in the bill of $2000 in the statement of the aggregate amount of these items. But the items themselves are to control as to what is their amount, rather than the statement of what their aggregate amount is; so that the averment of the bill must be taken to be, that $29,500 was the original amount received. This allegation of the bill must govern as to extent, even though the proof may show $33,000 was the amount received. The complainant must recover within the limit of her allegations. She can not allege in her bill that defendant received the sum of $29,500, and then make proof that he received $33,000, and recover that amount. She could only do so on amendment of her bill, so as to make the allegations broad enough to admit the proof within their limit. Here, then, as we understand, is an error in this itemized account, to start with, of $3500.

Other palpable errors in this itemized account might be pointed out. But without further dwelling upon it, we may say, that a master's report which has to depend upon such an account for its support, fails of being sustained.

The exceptions to the master's report should have been allowed.

The decree was for the whole amount found due by the master, without regard to the credit of $2000, December 2, 1870, established by the testimony at the final hearing on the master's report.

The prior interlocutory decree, by its sweeping terms, annulled the deed of conveyance and assignment in trust of May 27, 1870, without any allegation in the bill to found it upon. In these respects there was error.

The decree will be reversed, and the cause remanded for further proceedings, in conformity with this opinion.

*Decree reversed.*