## MANSFIELD M. STURGEON, Adm'r, etc.

### v.

## ANN C. BURRALL ET AL. Ex'rs.

1. PARTIES.—In a proceeding by an administrator against certain parties allege 1 to have been agents of his intestate, for an accounting of their agency, the heirs of plaintiff's intestate are not necessary parties because of their interest. The administrator is the representative to attend to their interest, by collecting what was due the intestate and making distribution thereof.

2. DEMURRER FOR MULTIFARIOUSNESS.—Mere surplusage does not make a bill in chancery multifarious or otherwise bad on demurrer.

3. BILL IN CHANCERY—SUFFICIENCY OF ALLEGATIONS.—The bill in this case alleged that the husband of one of the defendants acted as the agent of complainant's intestate, in the management of her property, and that in such capacity he had received funds belonging to her for which he ought to account to the complainant as administrator, and that the defendant had fraudulently received from him a portion of such funds; it also contained charges of fraud and undue influence on the part of defendants, in obtaining an assignment of such funds. Held, that if the allegations of the bill were true, the complainant was entitled to relief, and a demurrer thereto was improperly sustained.

Appeal from the Circuit Court of Rock Island county; the Hon. Geo. W. Pleasants, Judge, presiding.

Mr. C. M. Harris, for appellant; that a widow prevented by fraud from dissenting to her husband's will within the time required by law, will be placed in equity in the same position as she would have been had she dissented in time, cited Smest et ux. v. Waterhose ĕt al. 10 Yerg. 94; Strawn v. Strawn, 50 Ill. 256; Paul's Executor v. Paul, 36 Pa. St. 283; 11 Ala. 32.

Dower may be assigned by parol. Nothing is required but to ascertain the widow's share, and when this is done, and she has entered, the freehold vests in her without livery of seizin or writing: Boyers v. Newbanks et ux. 2 Ind. 388; Lull v. Stubbs, 35 Me. 95; Carter v. Hobert, 41 Me. 230; 51 Me. 369.

Dower survives although not assigned during the lifetime of the widow: Turner et al. v. Harris et ux. 27 Miss. 737; Todd v. Baylor, 4 Leigh, 507; Paul's Executor v. Paul, 36 Pa. St. 282; Foublanque's Eq. 23; Mulford v. Heirs, 2 Beav. 13.

That the demurrer should not have been sustained, there appearing to be equity in the bill, though not clearly stated: 1 Johns. Ch. 58; 3 Johns. Ch. 467; 5 Johns. Ch. 184; How. Pr. 53; 46 N. Y. 626; Kenchbon v. McCullough, 4 Law & Eq. 13; Wescott v. Wicks et al. 72 Ill. 524; Farwell v. Johnston, 34 Mich. 342; Place v. Minster et al. 65 N. Y. 89.

As to fraud: Story on Sales, § 158; Story's Eq. Jur. § 331; 1 Williams on Ex. 47; Gale v. Gale, 19 Barb. 269; Kennedy's Heirs, etc. v. Kennedy's Heirs, 2 Ala. 572; McConnihe v. Savage, 12 N. H. 376.

As to undue influence: McLaughlin v. McDent, 63 N. Y. 213; Rollwaggon v. Rollwaggon, 63 N. Y. 504; 41 Ga. 271; Tyler v. Wilburn, et al. 20 Mo. 306; Hall v. Hall, 18 L. T. Rep. 153; Davis v. Calvert, 5 G. & J. 269; Gardner v. Gardner, 34 N. Y. 155; Tyler v. Gardner, 35 N. Y. 559; Turner v. Chapman 2 McCoster, 243; Moore v. Blannett, 2 McCoster, 367; Hall v. Hall, 38 Ala. 131; Rockafellow v. Newcomb, 57 Ill. 187; Corsett v. Bell, 1 Younge & C. 578, note; 2 Red. Sur. Rep. 179.

As to presumption of fraud and undue influence from imbecility: James v. Greaves, 2 P. Wms, 270.

Sturgeon v. Burrall et al.

Generally as to fraud and undue influence: Willard's Eq. 179; Harding v. Handy, 11 Wheat. 125; Lee v. Dill, 11 Abb. 214; Simpler v. Lord, 28 Ga. 52; 66 Pa. St. 281; Buffalow v. Buffalow, 2 Dev. & B. 141; Long v. Long, 9 Md. 48; Cruise v. Christoph's Adm'r, 5 Dana. 181; 2 Harris, 147; 9 B. Mon. 30; 2 Hogg Eccl. 84; Kerr on Fraud and Mistake, 386; 2 Red. Sur. Rep. 179; Casborne v. Bersham, 2 Beav. 76; Hinchman v. Adm'r of Edmonds, 1 Saxton, 101; Jennings v. McConnell, et al. 17 Ill. 184; Trotter v. Smith, 59 Ill. 244; 8 Harris, 329; Parfit v. Lawless, 2 P. & D. 462; Dean v. Nagley, 41 Pa. St. 312; Monroe v. Barclay, 17 Ohio St. 302; Wilkinson v. Joughlin, L. T. Rep. 2 Eq. 319; Carron v. Hunter, L. T. Rep. 362; Fulton v. Andrew, L. T. Rep. 448.

As to the confidential relations between the parties as affecting their acts:    Whelan v. Whelan, 3 Cow. 537; Carpenter v. Danforth, 19 Abb. 225; 2 Red. Sur. Rep. 34;    Dent v. Burnett, 7 Sim. 539.

Presumption against the validity of a conveyance or gift to a person occupying the position of trustee or agent:    Gould v. Gould, 36 Barb. 270; Story's Eq. Pl. 110; Murphy v. Osborn, 2 J. & L. 222; Farwell v. Farwell, 1 Bush, 511; Moore v. Prancy, 9 Hare, 299; Trotter v. Smith, 59 Ill. 240; Gressley v. Mosely, 3 D. G. F. & J. 433; Todd v. Grove, et al. 33 Md. 188; Yostin v. Laughan, 49 Ill. 594; Griffiths v. Robins, 3 Mad. Ch. 105; Rhodes v. Bate, L. T. Rep. 252; Tonsa v. Judges, 3 Drew, 306; Walker v. Smith, 29 Beav. 394; Nesbit v. Lackman, 34 N. Y. 167; Story's Eq. Jur. 311; Simpler v. Lord, 25 Ga. 52.

Gifts from parent to child:    Carpenter v. Herritt, Red. 338; Jukins v. Pye, 12 Pet. 241; Taylor v. Taylor, 8 How. 183; Heman v. Heman, 2 Atk. 160; Berdow v. Dawson, 34 Beav. 603; Stiles v. Stiles, et al, 14 Mich. 72; Wilson v. Bull, 10 Ohio 250; 7 Fla. 7; Kerr on Fraud and Mistake, 179; Paschall, adm'r, v. Hull et al. 5 Jones' Eq. 108.

Upon the question of misjoinder of parties, and that there was a conspiracy between the defendants:    Walsham v. Stinton, 1 De. G. J. & S. 678; People v. Tweed, 12 N. Y. S. C. 354; Newman v Fowler, 14 Am. Law Reg. 127; Colt v. Woolaston, 2 P. Wms. 156; Oard v. Oard, 59 Ill. 46; Evans v. Bicknell,

6 Ves. Jr. 174; Kerr v. Fraud and Mistake, 47; Wheeler v. Reynold, 2 Law & Eq. Rep. 12; Hawley v. Cramer, 4 Con. 718.

Against the objection that the bill is multifarious: McNab v. Heald et al. 41 Ill. 331; Ryan v. Shawneetown, 14 Ill. 20; 18 How. U. S. 253; Buching v. Lloyd, 3 Drew, 227; Winson et al. v. Pettis et al. Sup. Ct. Rhode Island, 1877; 1 Oregon, 254; 19 Ill. 105; 2 Day, 553; Att'y. Gen'l. v. Cradock, 3 Myl. & C. 85; Bedsall v. Monroe, 5 Ired. 313; Salvidge et al. v. Hyde et al. 5 Mad. 89.

As to false representations made to the deceased: Perry on Trusts, 171; Benjamin on Sales, 397; 1 A. K. Marshall, 370; Elder v. Atkins, 45 Ga. 13; Peter v. Wright, 7 Blackf. 178; Harrel v. Harrel, 1 Duval, 203; Bates v. Bates, et al. 27 Iowa 111.

Mr. HENRY CURTIS, Jr. and Mr. CHARLES DUNHAM, for appellees; that the right to the widow's award does not survive to her administrator, cited Adams v. Adams, 18 Met. 170; Foster v. Fifield, 20 Pick. 70; Thompson v. Thompson, 30 Miss. 152; York's Adm'r. v. York, 38 Ill. 522; Cross v. Cary, 25 Ill. 562; 1 Redfield on Wills, 517; North's Probate, § 533 a.

That unless the widow renounced the provisions of the will she could not take her share in the personal estate of her husband: In re Taylor's will, 55 Ill. 252; Boyles et al. v. McMurphy, 55 Ill. 236; White et al. v. Dance, 53 Ill. 413; Rawson v. Rawson, 52 Ill. 62; Skinner et al. v. Newberry, 51 Ill. 203; McMurphy v. Boyles, et al. 49 Ill. 110; Lessly v. Lessly, 44 Ill. 527; Padfield v. Padfield, 78 Ill. 16.

Upon the rule of construction of wills: Boyles et al. v. McMurphy, 55 Ill. 236; White et al. v. Dance, 53 Ill. 413; Rawson v. Rawson, 52 Ill. 62; Ferguson et ux. v. Stewart's Ex'r, Ohio, 140; Boskin's Appeal, 3 Penn. 304; 1 Redfield on Wills, § 430; Williams on Executors, 808; 2 Jarman on Wills, 2.

That the bill cannot be maintained against Edward Burrall for the proceeds of the bonds given to his wife, the tort being waived by bringing the action in this form, and he not having received any of the proceeds of the bonds: Belden v. Perkins, 78 Ill. 449; T. W. & W. R'y Co. v. Chew, 67 Ill. 378; Johnson et al. v. Salisbury, 61 Ill. 316; Creel v. Kirkham, 47 Ill.

344; Manahan v. Gibbons, 19 Johns. 425; Osborn v. Bell, 5 Denio, 370; Crovath v. Plympton's Adm'r, 13 Mass. 453; 2 Greenl'f. Ev. § 108; 10 Pick. 161; 3 Gray, 260; 1 Hill, 234.

No damages for the wrong can be had in this action, but merely an accounting for the amount realized: Manahan v. Gibbons, 19 John. 425; Osborn v. Bell, 5 Denio, 370; Crovath v. Plympton's Adm'r, 13 Mass. 453; Southerland v. Brush, 7 John. Ch. 17; Monell v. Monell, 5 John. Ch. 283; Shepardson v. Rowland et al. 28 Wis. 108; Shepard v. Sanford, 3 Barb. Ch. 127.

That damages for failure to assign dower do not survive to the administrator of the dowress: 2 Scribner on Dower, 678; Turney v. Smith, 14 Ill. 242; Millar's Adm'r v. Woodman, 14 Ohio, 518; Kiddall v. Trimble, 1 Mad. Ch. 143; Norton v. Tucker, 1 Atk. 525; Rowe v. Johnson, 19 Me. 146.

In equity, the tenant is considered as trustee of the widow, and answerable to her for his receipts of rent in respect to her one-third: Johnson v. Thomas, 2 Paige, 384; Sellman v. Bowen, 8 Gill. & J. 50; Hazen v. Thurber, 4 Johns. Ch. 604; Green v. Tenant, 2 Harr. 336; Russell v. Austin, 1 Paige, 192; Newbold v. Ridgway, 1 Harr. 55.

That if the tenant dies pending the ascertainment of the widow's dower, the court will assign, provided that at the time of filing the bill, the legal right to damages is not gone: 1 Story Eq. Jur. § 625; Curtis v. Curtis, 2 Bro. C. C. 620; 2 Daniels Ch. Pr. 1140.

That the bill is multifarious, as uniting separate and distinct causes of action, and causes in which one or the other of the defendants has no interest: 1 Daniel's Ch. 341; Burnett v. Lester, 56 Ill. 311; Rignold v. Augland, 11 Sim. 24; Clanmorgan v. Guisso, 1 Mo. 131; Darom v. Fanning, 4 Johns. Ch. 199; Harrison v. Hogg, 2 Ves. Jr. 323; Boyd et al. v. Hoyt, 5 Paige Ch. 65; 1 Barbour's Ch. 40; Story's Eq. Pl. § 271.

Leland, P. J.   The court below sustained separate demurrers filed by the appellees to a bill in chancery and the complainant abiding, it was dismissed.   This decision of the court below is assigned for error.

Appellee complains that the bill is very voluminous; that it is indefinite, uncertain, unintelligible, redundant in statement, multifarious and without equity. With its exhibits it covers some fifty manuscript pages. As it would be remarkable if there could be a bill in equity of such length, with no equity in it, we have endeavored to extract from the bill the material portions.

It alleges that Charles Jack made a will in 1860, and died in 1867; a copy of the will is set out. The will disposes of all his estate, making his daughter Ann C. Burrall residuary legatee and devisee, and her husband, Edward Burrall, Jr., executor. The only portions of the will devising or bequeathing anything to his widow, Ann Jack, are as follows: "Whereas, I consider that my wife Ann will be amply provided for by right of dower in property belonging to me, and in a lot of land near Chicago, heretofore sold by me without relinquishment of dower thereof, merely "in memoriam," I give and bequeath all lots belonging to me in the Town of Knoxville, Knox Co., Illinois, 80 acres of land on Spoon River, said county, the description not now recollected; also town lots in Rome, in Peoria county, to have and to hold the same unto the said Ann Jack, her heirs and assigns in fee simple." "Of my horses I give old Fanny to my wife."

It does not appear by the bill that the widow ever renounced the benefit of the provisions of the will. It is alleged that the deceased left a widow Ann Jack, one daughter Ann C. Burrall, one grand-daughter Mary J. Elliott, married to Frederick P. Burgett, and one grand-son Charles W. Harris, and no other descendants; that he left a large estate, real and personal, in this State and Texas. It is alleged in the bill that Edward Burrall, Jr., at the instance of his wife, converted to his own use the personal estate of Charles Jack, collected rents and other debts and kept the money, some before and some after the death of Charles Jack; and that Ann Jack became entitled, on the death of her husband, to her award of personal property of his estate to amount of $1,500; to her dower in some land near Chicago, and in the real estate in Henry county. It is also claimed by the bill that she was entitled as a widow, absolutely

to one-third of all the personal estate left by Charles Jack, deducting the indebtedness, which was claimed to be little if anything; that Ann Jack, the widow, had in her lifetime, and at her decease, moneys, bonds, property, etc., worth more than $25,000; that the defendants converted and sold such property and the award above mentioned, except such as they delivered to complainant, as afterwards stated.   There then follows a long minute account of the physical and mental peculiarities of the widow Jack, giving her weight at 100 pounds, or two-thirds of that at times, state of health, and a long list of her idiosyncrasies, followed by, and apparently stated as evidence to support this allegation at the end, that she never had the capacity to comprehend her rights, interest, property or business affairs, or have much, if any conception thereof, or to transact business with regard thereunto understandingly, nor to select a suitable person to transact it for her, nor to protect her interest against any who might have control of it, or her property, nor for the determination of her rights of property, and that her physical strength and mental capacity were much reduced by great age, and her apprehensions and distress, hereinafter stated, years before the death of her husband, and thereafter much more, and continuously until her death, and long before the transaction of any of the business hereinafter stated, was wholly incapable thereof, or of properly or understandingly transacting any such or other business of any importance whatever.

Next follows a long account of Jack's going to Texas, of his being brought back insane, of how he lived in Texas, among marauding Mexican Indians and half-breeds, who murdered and robbed the inhabitants, that the widow regarded Texans as outlaws and dangerous, and that she suffered from apprehensions for his life, which was aggravated by his being insane, and having been killed by one who was in an asylum with him.   Then we have an account of proceedings declaring him insane; that Burrall sought to be appointed conservator and failed; that he tried to represent the estate as worthless, less than a seventh of what it was really worth.

It is also stated that Ann C. Burrall tried to get appointed

administratrix of Ann Jack, and that she represented the estate to be small. It is also stated that Burrall obtained the agency of Jack's business while one Nowers was acting as such, by means of false and fraudulent representations to Nowers as to Jack's wishes, etc., and that Nowers delivered up money and promissory notes (stating their amount) which were collected by Edward Burrall under the pretense that he was such agent; that Ann Jack resided with Burrall and his wife for some time next before her death; that soon after the death of Charles Jack said Burrall took charge and control of all the interest and property acquired by Ann Jack, as widow of her husband, and of all of her own property, and retained it till her death, though a bank account was kept in her name, as Edward Burrall directed it should be; that said E. Burrall, Jr., sold the dower of said Ann Jack in some land in Cook county for $20,000, and as her agent he invested $19,000 thereof in United States registered bonds for the nominal amount and value of $18,000; that said Edward Burrall, Jr., as such agent, sold the remainder of the dower of the said Ann Jack in the Cook county land for $1,550, less fees and expenses of sale. Next follows a long account of the improper means and appliances used by Burrall and his wife, alleged to be undue influence, by which Ann Jack was induced to agree that she would accept $5,000 and her homestead, which was hers, instead of having her dower set off in the remaining lands of the deceased. It is alleged that this was never really paid to her, although probably entered on her bank account at the instance of the said E. Burrall, Jr., without her knowledge, for the purpose of creating, as he supposed, evidence of a payment to her never made nor intended to be.

It is then claimed that her dower was worth more than the $5,000 and the homestead, and that this agreement should not be recognized as valid, and that she should have what the damages for not setting off the dower or the rent was worth. It is alleged that while the homestead was hers, independent of said dower, of which she was ignorant, she received it as part payment therefor.

It is then alleged that Burrall and wife received a considerable

Sturgeon v. Burrall et al.

amount for rents of her homestead, which accrued to said Ann Jack after the death of her husband, and that they have converted them to their own use. Here follows another long account of the false statements and improper conduct of Burrall and wife toward, and their improper influence over, Ann Jack, the widow, culminating in the charge that Burrall and his wife claim that said Ann Jack transferred and delivered to Ann C. Burrall the bonds aforesaid, with this allegation in relation thereto, viz: That at the time of the making of the alleged transfer and delivery aforesaid, and for some time before then, said Burrall and wife exercised over said Ann Jack an habitual power and influence, constraining her to do whatever they desired her to do, however much against her will, desire and interest, and that she had habitually submitted to such power and influence, and did whatever they directed her to do, although against her will and interest, and not because of attachment or affection for either of them, but from fear of them in such matters, which subdued and controlled her more than would have done a fear of force, great bodily injury or of unlawful constraint; that Burrall and wife by reason of said Ann Jack being incapacitated, of her credulity in believing the false representations aforesaid, and on account of her very old age, and by the use of the means aforesaid, and of said Burrall having been her agent for the transaction of all of her business, and of her living with him, and of her having had no independent advice, and of the exercise of undue influence by them over her at the time, and of such fear, did procure from her the alleged assignment of said bonds, and the delivery thereof; that said Ann Jack did make such transfer and delivery at the dictation and by the direction of said Burrall and wife and against her will, and that she would not but for having been compelled to by them; that such transfer and delivery of said bonds is void for the reasons aforesaid and did not divest said Ann Jack of the title thereto.

Next follows a statement of a demand by the complainant upon Burrall and wife, and a delivery of some cash, and notes amounting to about $2125.00, and of a refusal to account for more, with a prayer for an account of the estate, effects, bonds,

35

etc., possessed or come to the hands of the defendants or of any other persons for them, or either of them. There is also a prayer that the $5,000 should be accounted for under the arrangement to take that for the dower, if the damages for not setting off the dower, or rents cannot be recovered in lieu of the $5,000.

This contains as much of this lengthy bill as is necessary to an understanding of the questions, and perhaps more.

Among other causes of demurrer, it is said that the two grandchildren were necessary parties, either as complainants or defendants, because of their interest. We have looked at the cases cited by the appellee's counsel, and we do not think them applicable. The amount to be collected, if the remedy was at law, as contended, could only be at suit in the name of the administrator of Ann Jack. It does not appear whether there are creditors having claims against the estate or not. The administrator we consider as the proper person, at law, or in equity, to collect money due the intestate at the time of her death, though the person of whom it should be collected might be entitled to a share on the distribution after payment of debts. Though the grandchildren may have an interest, the administrator is the representative to attend to their interest by collecting what was due the intestate, and making distribution thereof. If there be any equity in the bill, though the amount claimed may be too large, and if the bill is not multifarious the demurrer should not have been sustained, but the court should find for complainant on the hearing for the portion sustained by the evidence.

We might concede that, as the widow did not renounce the provisions of the will, the personal estate of her husband went to the residuary legatee, and that Ann Jack was not entitled to any such personal estate, except the widow's award mentioned in Sec. 74 of Chap. 3, as contended for.

We might also concede that she was not entitled to the award itself, because she did not have it set off to her before she died, and so as to the damages or rents on account of not setting off dower. This would only affect the quantum of the relief upon the final hearing. Mere surplusage does not make a bill multifarious or otherwise bad on demurrer.

The ground upon which this bill is to be maintained is that Edward Burrall, Jr., alone, or he and his wife together, or Ann C. Burrall alone, were agents in charge of the funds of Ann Jack, under such circumstances as would entitle the principal, or her representatives, to an account of the business of the trust or agency; and as incident to this question is the one whether, if they were so, or if either one was, they have adjusted and settled such matters of agency by appropriating to themselves the trust fund by the consent of the principal, or, in other words, whether she has made them, or one of them, a gift or present of it, or part of it.   If capable of making such a gift, and if she fairly did so give her agents the whole fund, under circumstances to be approved by a court of equity, that might end the matter.   If not, the agents should account for that so claimed to be given.   At any rate, they, or one of them, should account for the portion which was not given.

There is a lack of precision in the allegations of the bill, perhaps unavoidable, as to whether the husband or the wife, or both of them, were the agents or trustees in charge of the business affairs of Ann Jack.   After looking at the bill carefully, it would seem that, as between husband and wife, the former was the principal and the wife the aider and assistant.   It is alleged that Edward Burrall, Jr., was the business agent or manager of the affairs of Ann Jack.   The nature of the business transacted was more proper for a man to perform than for a woman, and the allegations of the bill are that it was transacted by the husband; that an account was kept in the name of Ann Jack at such bank or banks as Edward Burrall, Jr., directed it should be.   It is also distinctly alleged that the husband had charge and control; that he, as agent, sold the dower right to some of the Cook county land, and received the $20,000 therefor, and that he invested it in United States bonds; that he, as agent, sold the remainder of the dower in this land for $1,550.00, and, as such agent, received the money, less certain fees and expenses of sale; that he entered on her bank account the sum of $5,000, which Ann Jack agreed to take in lieu of having her dower assigned to her.

If this $5,000, though paid for an account of Ann Burrall to

Ann Jack, was received by Edward Burrall, Jr., as the agent of said Ann Jack, he should account for it, even though she may have had no right to any rents and profits until dower was assigned, as contended for. Her agreement that she would not claim dower, and her not claiming any rents during her life, would be a good reason why the $5,000 should be accounted for, if Edward Burrall did actually treat it as a fund to that amount of Ann Jack, in his hands, as her agent and business manager, as alleged.

If he seeks to escape liability to account for the United States bonds on the ground that his principal made a gift of them to his wife, the latter has interest enough in this question to make her a proper party, though no case may be made for a money decree against her. If this supposed assignment was nothing more than a fraudulent contrivance on the part of husband and wife to prevent the husband from accounting for the bonds, and for inequitably depriving the nephew and niece of their interest in them, he should account notwithstanding such supposed gift, or both should.

Whether it was an actual binding gift, depends upon the mental condition of Ann Jack at the time, and it is alleged, with a great deal of alleged evidence to prove it, that she was mentally imbecile to the extent of having no will of her own, and no capacity to understand and perform business, and that inequitable means, amounting to fraud, were resorted to, to obtain the supposed gift of the bonds, and settlement at $5,000 for the rents to which Ann Jack would have been entitled if her dower had been set off.

It seems to us that, according to the allegations of the bill, the husband was the agent and trustee, and the wife one who aided him in misappropriating for her benefit, or for that of both, the fund entrusted to his charge. Even if, under such circumstances, the fund went part into the possession of the husband, and part into that of the wife, so that equity, following it, might decree that each one should account for the portion so obtained, the bill would not, in our opinion, be multifarious for such *joinder* of two defendants, jointly engaged in misappropriating the one fund and of course not, if they were jointly liable.

There seems to be no fixed rule universally applicable, as to what constitutes multifariousness.    Story's Eq. Pl. Sec. 530. After examining what this author says in Sec. 271 and following sections, and also other authorities, among them Gaines & wife v. Chew et al. 15 Curtis, 236 ( 2 How. U. S. 615), we do not consider the injustice of proceeding against both the defendants in one suit, nor the inconvenience to the court on account of too much intricacy, such as to render the joinder of both defendants a cause why the bill should be deemed multifarious.

Taking into account the charges of fraud, of undue influence, of mental imbecility, the prayer to set aside the alleged gift of the bonds, and the $5,000 liquidation of the one-third of the rents claimed by virtue of dower, the allegations as to the fiduciary relations of the parties, and also considering the nature of the accounts of the agency, or trust, that may be required to be taken, and that such accounting may be such as could not as well be taken in a court of law, we have concluded that the case is one in which, if the allegations of the bill are true, the complainant is entitled to relief in a court of equity. Craig v. McKinney, 72 Ill. 305.

If the material matters contained in the bill had been more briefly stated, the court below, as well as this court, could have had a better conception of the case, and less difficulty about arriving at a correct conclusion.    We hope that the bill may be amended by removing from it that portion which appears to be redundant before taking testimony under an issue made in the case.

Although it is not entirely without difficulty that we have arrived at it, our conclusion is that the bill should be answered, and in order that it may be, and a hearing had, the decree below is reversed and the cause remanded.

Reversed and remanded.